**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| GLOBAL SAILING LIMITED<br><br>Plaintiffs,<br><br>v.<br><br>FARZAD RASTEGAR,<br>LASERPERFORMANCE (EUROPE)<br>LIMITED, and<br>QUARTER MOON, INCORPORATED.<br><br>Defendants. | JURY TRIAL<br>DEMANDED |

**COMPLAINT FOR DEFAULT OF CONTRACT, INDUCEMENT**
**TO DEFAULT CONTRACT, AND UNFAIR COMPETITION**

GLOBAL SAILING LIMITED (hereinafter "GSL") bring this action against FARZAD

RASTEGAR (hereinafter "Rastegar"), LASERPERFORMANCE (EUROPE) LIMITED

(hereinafter "LPE"), and QUARTER MOON, INCORPORATED, (hereinafter "QMI"), and

complains and alleges as follows:

### Introduction

This case is a related case under Local Rule 40 to one already before this court—Bruce

Kirby, et. al. v. LaserPerformance ("Europe") Limited, et. al., Case no. 3:13-cv-00287 JAM ("the

'297 action"). Certain claims in this action are essentially identical to certain claims asserted in

the '297 action, albeit with a different Plaintiff; others arise out of the same set of operative facts

as are present in the '297 action. This case is brought because the court in the '297 action first

determined, on August 12, 2016, that GSL was/is the proper party to assert such claims, and then

determined, on June 22, 2017, that GSL would not be allowed to amend its counterclaim so as to

assert these claims in the '297 action, but should, instead bring a new case.

1

The dispute concerns the production, sale, and racing of sailboats designed by Bruce Kirby ("Kirby") and his company, Bruce Kirby, Inc. ("BKI") (collectively, the "Kirby Plaintiffs"), since about 1970. In order to establish the Kirby sailboat design as a standard class for international racing, the Kirby Plaintiffs reached agreements with the various sailboat Builders (hereinafter "Builders Agreements") who held rights to the Laser name as well as the international governing bodies that regulate competitive sailing.  Under the terms of these agreements, the Builders paid a royalty to the Kirby Plaintiffs and received the right to manufacture boats according to the Kirby sailboat design and a uniform Construction Manual and to affix a plaque on the hull of each boat featuring Kirby's name and trademark, and a unique hull/sail number.

The plaque confirms that the boat was built according to the Kirby sailboat design and is authorized by Kirby.  Only those boats manufactured under the various Builders agreements and bearing the appropriate plaque were entitled to race in events sanctioned by the international governing bodies.

The rights to manufacture, sell and affix the plaque to Kirby Sailboats were assigned and sold by and to various entities over the years. As of 2008, those rights were owned by Defendants QMI and LPE under the respective Builders Agreements. Both QMI and LPE were, and are, controlled by defendant Rastegar.

In 2008, the Kirby Plaintiffs decided to sell their rights in the Laser boat design. They entered into a sales contract with GSL to receive a fixed sum for certain of the interest in the Kirby Sailboat including, inter alia, all royalty rights under the Builders Agreements for the sale of Kirby Sailboats.  In January 2009, GSL informed LPE and QMI that the rights had been assigned and to send all royalty payments to GSL.  However, LPE and QMI continued to send

royalties to the Kirby Plaintiffs. When the Kirby Plaintiffs refused to accept the payments, LPE and QMI first made the payments in escrow and then stopped paying altogether.  Both LPE and QMI also refused, on orders from Rastegar, to allow representatives of GSL to review and inspect the books and records pertaining to the sale of Kirby Sailboats as required by the Builders Agreements. This refusal continued after the first refusal, and continues unabated to the present.

In 2011, the Kirby Plaintiffs and GSL entered another agreement that purported to revise the parties' relationship in light of the lack of consent by the Builders to the transfer of rights to GSL.  Following entry into that agreement, the Kirby Plaintiffs then terminated the Builders Agreements with LPE and QMI in 2012.

The '297 action followed. This action follows the above-described rulings in the '297 action.

## Jurisdiction and Venue

1.      This is a civil action arising under certain laws of the United States, (see Title 15, U.S.C. Sections 1051 et seq., as amended (hereinafter the "Lanham Act"), 1114 and 1125, as well as state statutory and common law grounds including claims of unfair competition, breach of contract, and tortious inducement to breach. This Court has subject matter jurisdiction pursuant to 15 U.S.C. Sections 1121, and 28 U.S.C. Sections 1331, 1338, and 1367(a) because this Complaint raises federal questions under the Lanham Act, and pursuant to 28 U.S.C. 1332 (a) with respect to all of the claims because of the parties' diversity of citizenship. This court also has pendant jurisdiction over the state court claims.

2.      Personal jurisdiction over Defendants is vested in the United States District Court for the District of Connecticut pursuant to Conn. Gen. Stat. § 52-59b.  Upon information and

belief, Defendants conduct business in Connecticut and their acts within or directed toward Connecticut have caused injury to GSL in Connecticut.  On information and belief, Defendants actively promote and sell their products and services in Connecticut, have advertised in Connecticut, and/or have intentionally acted in a manner to cause injury in Connecticut. Furthermore, LPE, QMI and Rastegar have had direct business dealings with GSL in Connecticut.

3.      Venue is proper under 28 U.S.C. § 1391(b) because the claim arose in this district and under 28 U.S.C. § 1391(c).

<u>**The Parties**</u>

4.      Plaintiff Global Sailing Limited ("GSL") is a limited liability company having a place of business at Level 8, 57 Symonds Street, Auckland, New Zealand 1010.

5.      Defendant LaserPerformance (Europe) Limited ("LPE"), on information and belief, is incorporated in England and Wales, having a place of business at StationWorks, Long Buckby, Northampton, NN6 7PF, England, United Kingdom.  On information and belief, LPE has regularly conducted business in Connecticut, at least by making royalty payments to Kirby.

6.      Defendant Quarter Moon, Incorporated ("QMI"), on information and belief, is a Rhode Island Corporation having a place of business at 200 Highpoint Avenue, Portsmouth, Rhode Island 02871.  On information and belief, QMI has regularly conducted business in Connecticut by selling boats and parts throughout the state, and paying royalties to Kirby and GSL.

7.      Defendant Farzad Rastegar ("Rastegar") is an individual having residence at 30 Broad Street, Weston, Connecticut, United States.  Upon information and belief, Rastegar has places of business in Connecticut at 25 Van Zant Street, Norwalk, CT 06855; 125 Main Street,

Westport, CT 06880; and 4 Testa Place, Norwalk, CT 06854. Also on information and belief, Rastegar controls LPE and QMI.

## Background

8.      Kirby is the designer of a 13 foot 10 ½ inch sailboat herein referred to as the "Kirby Sailboat." The methods and materials for manufacturing an official Kirby Sailboat are contained in a confidential document hereinafter referred to as the "Construction Manual".

9.      Kirby is a widely recognized figure in the sailing community, both in the United States and throughout the world.

## 1983 Builders Agreement

10.      On or about July 11, 1983, Kirby entered into a Builders Agreement ("1983 Builders Agreement") with Brook Shaw Motor Services Ltd. ("Brook Shaw").  A copy of the 1983 Builders Agreement is attached as Exhibit 1.

11.      The 1983 Builders Agreement established Brook Shaw as the licensed Builders of Kirby Sailboats in Europe and elsewhere.

## ISAF Agreement

12.      Thereafter, on or about November 30, 1983, the Kirby Plaintiffs entered into an Agreement ("ISAF Agreement") with Performance Sailcraft, Inc., Laser International Holdings Limited, ILCA, and the International Yacht Racing Union ("IYRU"). A copy of this agreement is attached as Exhibit 2.

13.      The ISAF Agreement governed the production, distribution, and management of Kirby Sailboats approved for officially sanctioned sailboat races worldwide.   Section

"Agreement 1" specifies that all authorized Builders of the Kirby Sailboats must have a license from the Kirby Plaintiffs.

14.     Section 5.1 of the ISAF Agreement stipulates that all Kirby Sailboats must be built in accordance with the Construction Manual to receive accreditation from the IYRU. Section 5.1 further stipulates that all parties agree that all Kirby Sailboats shall be manufactured in accordance with the highest possible degree of uniformity in every respect.

**1989 Builders Agreement**

15.     On or about March 31, 1989, Kirby entered into a License Agreement ("1989 Builders Agreement") with PY Small Boat, Inc. ("PYSBI"), a copy of which is attached as Exhibit 3.

16.     The 1989 Builders Agreement established PYSBI as the licensed Builders of Kirby

Sailboats in North America and elsewhere.

**Subsequent Amendments to the Builders Agreements**

17.     Upon information and belief, in or about 1991, Sunfish/Laser, Inc. succeeded to all of PYSBI's rights and obligations under the 1989 Builders Agreement.

18.     Upon information and belief, Performance Sailcraft Europe Limited ("PSE") succeeded to all of Brook Shaw's rights and obligations under the 1983 Builders Agreement on or about August 30, 1995.

19.     On or about March 25, 1997, Kirby and Sunfish/Laser, Inc. entered into an Amendment with QMI which succeeded to all Sunfish/Laser, Inc.'s rights and obligations in and to the 1989 Builders Agreement and the ISAF Agreement.

20.     On or about May 3, 2005 and June 16, 2005, Kirby and PSE entered Amendments to the 1983 Builders Agreement pursuant to which LPE succeeded to PSE's rights and obligations under the 1983 Builders Agreement.

21.     On information and belief, LPE is currently building Kirby Sailboats under a claim of authorization from the 1983 Builders Agreement.

### The 2008 and 2011 Agreements Between the Kirby Plaintiffs and GSL

22.     In 2008, the Kirby Plaintiffs decided to sell their rights in the Laser boat design. They entered into a sales contract with GSL to receive $2.6 million for certain of the interest in the Kirby Sailboat including, inter alia, all royalty rights under the Builders Agreements for the sale of Kirby Sailboats.

23.     In January 2009, GSL informed LPE and QMI that the rights had been assigned and to send all royalty payments to GSL.  However, LPE and QMI at first continued to send royalties to the Kirby Plaintiffs. When the Kirby Plaintiffs refused to accept the payments, LPE and QMI first made the payments in escrow and then stopped paying altogether.

24.     In 2011, the Kirby Plaintiffs and GSL entered another agreement that purported to revise the parties' relationship in light of the lack of consent by the Builders to the transfer of rights to GSL.

### Termination of the Builders Agreements and Defaults

25.     LPE and QMI have committed, *inter alia,* the following defaults under the Builders Agreements:

a. Since at least 2010, and reaffirmed in 2014, Defendants have denied representatives of GSL and/or the Kirby Plaintiffs access to their books and records;

b. Since at least 2008, Defendants have not made royalty payments. When the Kirby Plaintiffs advised Defendants that GSL should be paid, Defendants refused. Since at least 2011, Defendants have not even attempted to make royalty payments to any party;

c. On information and belief, LPE is selling Kirby Sailboats outside its territory in violation of articles 2.4 and 5.2 b) of the 1983 Builders Agreement;

d. In addition, LPE has continued to use the production tooling, molds and plugs following termination of the 1983 Builders Agreement in violation of Section 10.9 of that Agreement;

e. On information and belief QMI is currently building Kirby Sailboats under a claim of authorization from the 1989 Builders Agreement, manufacturing Kirby Sailboats following termination of the 1989 Builders Agreement in violation of Section 10.9 of that Agreement, and selling Kirby Sailboats outside of its designated territory in violation of Section 2.1 of that Agreement; and

f. In addition, QMI has continued to use the Construction Manual, production tooling, molds, plugs and designs following termination of the 1989 Builders Agreement in violation of Section 10.9 of the 1989 Builders Agreement.

26.     On information and belief, Rastegar has caused and directed the actions of Defendants as alleged in Paragraphs 25 (a-f).

27.     As a result of these defaults, the Builders Agreements were terminated in, no later than, 2012.

**CLAIM I**

**Unfair Competition under Section 43A of the Lanham Act**

**(against LPE and QMI)**

28.      GSL repeats the allegations set forth in paragraphs 1-27.

29.      As noted earlier, LPE and QMI are building, selling and/or manufacturing Kirby Sailboats, as well as using components, each despite having no authorization to do so.

30.      GSL owns the rights to so authorize, but has specifically not done so.

31.      Thus, LPE and QMI are making false designation of origin and/or descriptions of fact which are "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association…or as to the origin, sponsorship, or approval of…goods, services or commercial activities…"

32.      These actions violate Section 43A of the Lanham Act.

33.      GSL has been damaged by these actions.

**CLAIM II**

**Unfair Competition under Section 43A of the Lanham Act**

**(against Rastegar)**

34.      GSL repeats the allegations set forth in paragraphs 1-33.

35.      As noted earlier, on information and belief, Rastegar controls and dictates the actions of LPE and QMI including, but not limited to, their actions in building, manufacturing and selling Kirby Sailboats and using components, each without authorization to do so.

36.      Pursuant to Section 43A, Rastegar, by these actions, is also liable to the rights holder of the goods and commercial activities which, in this case, is GSL.

## CLAIM III

### Default of 1983 Builders Agreement

### (against LPE)

37.    GSL repeats the allegations contained in Paragraphs 1-36.

38.    LPE defaulted under the 1983 Builders Agreement for the reasons set forth in paragraph 25, above.

39.    LPE's defaults of the 1983 Builders Agreement were intentional.  These defaults have caused and will continue to cause damage to GSL, including, but not limited to, non-payment of royalties owed and inability to review corporate books and records to determine how much is owed.

## CLAIM IV

### Default of 1989 Builders Agreement

### (against QMI)

40.    GSL repeats the allegations contained in Paragraphs 1-39.

41.    QMI defaulted under the 1989 Builders Agreement for the reasons set forth in paragraph 25, above.

42.    QMI's defaults of the 1989 Builders Agreement were intentional. These defaults have caused and will continue to cause damage to GSL, including, but not limited to, non-payment of royalties owed and inability to review corporate books and records to determine how much is owed.

## CLAIM V

### Violation of the Connecticut Unfair Trade Practices Act

**(against LPE and QMI)**

43.    GSL repeats the allegations contained in Paragraphs 1-42.

44.    The acts of QMI and PSE which are in violation of 15 U.S.C. § 1114 also violate Section 110 b of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b, resulting in damage and ascertainable loss to GSL.

45.    In addition, both the 1983 and 1989 Builders Agreements require, *inter alia*, physical access to the books of the LPE and QMI, respectively in their capacity as Licensee, to a designated representative of the licensor. Both defendant LPE and QMI were given notice in accordance with the Builders Agreements that Mr. Peter Hedge had been designated as the representative of the licensor in December of 2010.

46.    Thereafter, Mr. Hedge proceeded to each Defendant's place of business and requested access in accordance with the Builders Agreements. He was denied.

47.    Neither Mr. Hedge, nor any other designated representative of the licensor has ever been allowed to have access to the books of the Defendants LPE and QMI. Further, in 2014, in discovery in the '297 case, a representative for QMI and LPE restated that GSL was not to be given physical access, a position which, on information and belief, continues to the present.

48.    Without access, GSL has no way to determine, *inter alia*, how many Kirby Sailboats are being sold by QMI and/or LPE (and thus, royalties due and owing), where there are being manufactured and sold, etc.

49.    These actions have tortiously interfered with GSL's rights under the Builders Agreements.

50.     GSL is entitled to punitive damages and attorneys' fees in accordance with Conn. Gen. Statue 42-110g.

## CLAIM VI

## <u>Violation of the Connecticut Unfair Trade Practices Act</u>

## <u>(against Rastegar)</u>

51.     GSL repeats the allegations contained in paragraphs 1-50.

52.     As noted, on information and belief, Rastegar directs and controls the actions taken by QMI and PE. This includes, but is not limited to, Defendant Rastegar's actions in personally instructing employees of Defendants LPE and QMI not to allow Mr. Hedge to have access to Defendant's books. Defendant Rastegar unambiguously instructed employees at the Defendants that this denial of access was not only for the present but was to extend unbroken into the future and was in fact to preclude any contact with Mr. Hedge or any representative of the licensor.

53.     In taking these actions, and directing those set forth in paragraph 25, above, Rastegar tortuously induced LPE and QMI to breach the 1983 and 1989 Builders Agreements.

54.     The acts of Defendant Rastegar are willful and constitute intentional interference with contractual relations. They have and will continue to cause damage and irreparable harm to GSL who has no adequate remedy at law.

55.     GSL is entitled to punitive damages and attorneys' fees in accordance with Conn. Gen. Statute 42-110g.

## <u>PRAYERS FOR RELIEF</u>

Wherefore, Plaintiff prays that judgment be entered against the Defendants as follows:

A.      That QMI and/or Rastegar immediately pay GSL for all unpaid past royalties, plus interest pursuant to the 1989 Builders Agreement;

B.      That LPE and/or Rastegar immediately pay GSL for all unpaid past royalties, plus interest pursuant to the 1983 Builders Agreement;

C.      That Defendants, their affiliates, agents, employees, servants, representatives, and all persons acting under or in concert with them, be preliminary and permanently enjoined from manufacturing Kirby Sailboats;

D.      That Defendants immediately forfeit and return to GSL all copies of the Construction Manual, along with all production tooling, molds, and plugs associated with the manufacture of Kirby Sailboats;

E.      That Defendants be required to account for and pay to GSL all profits derived as a result of the activities complained of herein;

F.      That Defendants be required to pay to GSL statutory damages sustained as a result of the activities complained of herein;

G.      That Defendants be ordered to allow physical inspection of Books of LPE per the 1983 Builders Agreement;

H.      That Defendants be ordered to allow physical inspection of Books of QMI per the 1989 Builders Agreement;

I.      That Defendants, jointly or separately, be required to pay enhanced damages due to their willful unlawful acts;

J.      That Defendants, jointly or separately, be required to pay costs and attorney fees and prejudgment interest at the statutory rate; and

K.      That this Court award such other and further relief as it deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all claims and issues so triable.


Date:                                        Respectfully submitted,



                                            /s/J. Kevin Grogan
                                            J. Kevin Grogan, ct00331
                                            Grogan, Tuccillo & Vanderleeden, LLP
                                            1350 Main Street, Suite 508
                                            Springfield, Massachusetts 01103
                                            Telephone: (413) 736-5401
                                            Facsimile: (413) 733-4543
                                            Email:  saillit@gtv-ip.com

                                            ATTORNEY FOR THE PLAINTIFF